IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MELISA D. BOYD,

          Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security
Administration,

          Defendant.

Case No. 6:15-cv-01399-AC

FINDINGS AND RECOMMENDATION

JAMES W. MOLLER
8655 SW Citizens Dr., Ste. 104
Portland, OR 97070
        Of Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

MARTHA A. BODEN
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075
        Of Attorneys for Defendant

1 – FINDINGS AND RECOMMENDATION

*Findings and Recommendation*

ACOSTA, Magistrate Judge:

Melisa Dawn Boyd ("Boyd") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision should be affirmed and this case dismissed.

*Procedural Background*

Boyd filed for DIB on May 8, 2012, alleging disability as of June 29, 2008 due to rheumatoid arthritis; chronic kidney disease (stage 1); anxiety and depression; myalgia; irritable bowel syndrome; obesity; hypothyroid; hypertension; and vitamin D deficiency. Tr. 16, 18, 133. Her application was denied initially and upon reconsideration. Tr. 94, 100. A hearing was held on December 6, 2013 before an Administrative Law Judge ("ALJ"); Boyd was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 31. On January 2, 2014, ALJ MaryKay Rauenzahn issued a decision finding Boyd not disabled. Tr. 16-29. Boyd requested timely review of the ALJ's decision and, after the Appeals Council denied her request for review, filed a complaint in this Court. Tr. 1-5.

*Factual Background*

Born in 1968, Boyd was 39 on the disability onset date and 43 years old on the date last insured ("DLI"). Tr. 24. She attended high school through the ninth grade. Tr. 580. She previously worked as a sales clerk, clerical support staff, and in the manufacturing industry. Tr. 280. Additionally, she has held a number of jobs for short periods of time through temporary employment agencies. Tr. 136-40.

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502 and 404.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b) and 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

3- FINDINGS AND RECOMMENDATION

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f) and 404.920(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must demonstrate that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found that Boyd had not engaged in substantial gainful activity from the alleged onset date, June 29, 2008, through her DLI of March 31, 2012. Tr. 18.

At step two, the ALJ determined Boyd had the following severe impairments: rheumatoid arthritis; chronic kidney disease (stage 1); anxiety and depression; myalgia; irritable bowel syndrome; obesity; hypothyroid; hypertension; and vitamin D deficiency. Tr. 18. The ALJ identified a few conditions that did not rise to the level of severe impairment, such as Crohn's disease and fibromyalgia. Tr. 19.

At step three, the ALJ found that Boyd's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20-21. Because Boyd did not establish disability at step three, the ALJ continued to evaluate how Boyd's impairments affected

4- FINDINGS AND RECOMMENDATION

her ability to work during the relevant period. The ALJ found Boyd had the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 404.1567(a) except:

> she could sit for up to 4 hours, and stand/walk for up to 4 hours in an 8-hour workday (with normal breaks). Such tasks had to allow her to change positions as necessary to relieve discomfort while still remaining on-task. She had to avoid climbing ladders, ropes, or scaffolds, but she could occasionally climb stairs or ramps. She could also occasionally stoop, kneel, crouch, or crawl. She had to avoid overhead reaching bilaterally. She could understand, remember, and carry out no more than simple instructions that could be learned within 30 days. She could engage in frequent, but not constant, bilateral handling and fingering. She had to avoid workplace hazards, such as unprotected heights or dangerous machinery. Such tasks had to avoid contact with the public.

Tr. 20-21.

At step four, the ALJ found that Boyd was unable to perform her past relevant work as a customer service representative and office clerk. Tr. 24.

At step five, based on the testimony of the VE and other evidence, the ALJ determined Boyd could perform other work existing in significant numbers in the national and local economy despite her impairments, including inspector of optical goods, addresser, and table worker. Tr. 25. Accordingly, the ALJ concluded Boyd was not disabled under the Act. *Id.*

*Discussion*

Boyd alleges the ALJ erred by improperly assessing: (1) Boyd's symptom testimony; (2) lay witness testimony; (3) Boyd's Listing determination; and (4) Boyd's RFC and the VE's testimony.

I. Boyd's Symptom Testimony.

The ALJ must consider a claimant's symptom testimony, including statements regarding claimant's pain and workplace limitations. 20 CFR § 404.1529. The ALJ is responsible for determining the veracity of such statements. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Unless there is affirmative evidence showing the claimant is malingering, the

5- FINDINGS AND RECOMMENDATION

Commissioner's reasons for rejecting the claimant's subjective testimony must be clear and convincing. *Burch*, 400 F.3d at 680. The ALJ must identify what testimony is not plausible and what evidence undermines the claimant's complaints. *Id.*; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The evidence upon which the ALJ relies must be substantial. *See Reddick* 157 F.3d at 724. The ALJ's overall symptom testimony evaluation may be upheld even if some of the ALJ's reasons for rejecting the claimant's testimony are overturned. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Boyd argues the ALJ failed to give clear and convincing reasons for rejecting her testimony.

The Commissioner argues that the clear and convincing standard should not apply, and urges the court to apply the deferential substantial evidence standard. This is a legally incorrect interpretation of law in the Ninth Circuit. It is well settled that, absent malingering, courts are to apply the clear and convincing standard when evaluating subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Even applying the clear and convincing standard, however, the ALJ's reasons are supported by the record.

The ALJ gave numerous reasons for rejecting Boyd's subjective testimony sufficient to satisfy the clear and convincing standard. First, the ALJ noted in a separate section of the opinion that Boyd's presentation at her psychological examination was normal, except her responses were "rambling and overly detailed" and she occasionally exhibited an "exaggerated" style in her responses. Tr. 19. When a plaintiff overdramatizes subjective symptoms, it can justify a finding of limited credibility. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989). Here, the ALJ identified the psychologist's report as evidence that Boyd's subjective symptom testimony was inaccurate. While the ALJ mentioned the report in a separate section of her opinion, it was still used to evaluate the veracity of Boyd's testimony. The ALJ did not err in identifying the report as evidence to reject Boyd's testimony.

6- FINDINGS AND RECOMMENDATION

Second, Boyd's medical records from the end of 2011 show that, contrary to her complaints of numbness, exhaustion, fatigue, and pain in her coccyx, lower spine, and hips, she exhibited normal gait, stance, and balance when examined. Tr. 290. Furthermore, Boyd denied abdominal tenderness and was noted to have normal mood, affect, concentration, and attention span. Tr. 276, 290. The ALJ noted that Boyd retained significant physical and mental functioning in spite of her complaints. Tr. 23. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by the objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ did not err when she contrasted Boyd's subjective complaints with medical records that tend to refute those complaints.

Boyd argues the ALJ erred by referencing isolated examples of normal objective findings, citing *Smolen v. Chater*. *Smolen*, however, is readily distinguishable. In *Smolen*, the ALJ cited contemporaneous medical records as evidence of a contradiction between the plaintiff's statements and her condition. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The court held the ALJ failed to identify the actual contradiction between the plaintiff's testimony and her medical records. *Id.* Here, the ALJ specifically referenced Boyd's testimony about her condition, and the medical records that directly contradicted that testimony. Furthermore, the ALJ did not cite isolated references of normal objective findings, but instead referenced several different findings from the end of 2011.

Third, the ALJ noted that Boyd's gastrointestinal problems, including IBS, coincided with a period where her earnings exceeded the level of substantial gainful activity. The ALJ may find against the plaintiff's symptom testimony when the plaintiff alleges a disabling condition that did not stop her from working. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

7- FINDINGS AND RECOMMENDATION

Boyd alleged IBS was a disabling condition but she was able to work for many years while suffering from its effects; IBS did not stop her from working. Boyd argues the ALJ must consider all her impairments in combination. While true for the overall disability analysis, that argument does not change that Boyd alleged IBS to be a disabling impairment despite her ability to work with it.

Fourth, the ALJ cited several occasions when Boyd's impairments dramatically improved with different treatments, including vitamin D supplements, reducing her sugar intake, increased movement, committing to a gluten-free diet, and taking probiotics. Impairments that can be controlled with medication are not disabling, and assertions that such conditions are disabling may be used to discredit subjective symptom testimony. *Tommasetti* 533 F.3d 1040. The ALJ noted that Boyd renewed her allegations of debilitating pain at the hearing. Tr. 21. Boyd stated that her various pains were "extremely painful" and "really bad" and that she has "never lived a day without pain since two thousand and – well, obviously, since 2006 or 2007; but there's times where things do get a little better, yes, absolutely." Tr. 41. The ALJ contrasted this testimony by citing one of Boyd's medical records, in which Boyd stated she felt "dramatically better" following her vitamin D injections. Tr. 264. The record also indicates that reducing Boyd's sugar intake "seemed to have helped" and movement sometimes helped her symptoms. Tr. 221. Furthermore, when Boyd began a gluten-free diet her symptoms significantly improved. Tr. 399. Finally, when Boyd took probiotics they "significantly improved her arthritis symptoms." *Id.* The ALJ did not err in using Boyd's medical records to contrast her testimony that she lived in constant pain which only got "a little better."

8- FINDINGS AND RECOMMENDATION

Any other reasons stated by the ALJ, to the extent such reasons were not clear and convincing, were harmless error as the ALJ provided numerous clear and convincing reasons to reject Boyd's subjective symptom testimony. *Batson*, 359 F.3d at 1195-97.[1]

II.  Third Party Testimony.

Boyd argues the ALJ failed to articulate legally sufficient reasons for giving only partial weight to the lay witness testimony of David Boyd, her husband, and failing to discuss the lay witness testimony of Lauren Stewart, her mother. Lay witness evidence is competent and cannot be disregarded without comment. *Tobeler v. Colvin*, 749 F.3d 830, 833-34 (9th Cir. 2014). An ALJ may reject lay witness testimony by giving germane reasons for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ gave partial weight to Mr. Boyd's testimony because it was written four months after Boyd's DLI and reflected her contemporary level of functioning. Tr. 23. At the hearing, Boyd stated her level of functioning declined shortly after her DLI. *Id.* Additionally, the ALJ stated that Boyd's exertional capacity improved with medication and a carefully managed diet, contradicting Mr. Boyd's description of her condition. *Id.* The ALJ gave Mr. Boyd's testimony partial weight to the extent it reflected a sedentary restriction involving unskilled work. *Id.* The ALJ did not address the lay witness testimony of Lauren Stewart.

The ALJ did not err in granting Mr. Boyd's testimony partial weight because it reflected Boyd's level of functioning after her DLI. Mr. Boyd stated "[Boyd] can't walk, stand, [or] sit because of pain in body." The statement is written in the present tense, and the ALJ did not err in identifying it as a reason to doubt Mr. Boyd was describing Boyd's pre DLI level of

---

[1] The court also notes the Commissioner offered numerous facts not asserted by the ALJ in support of her analysis; the court is constrained to review the facts as written in the opinion, and did not affirm based on these extraneous reasons. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

9- FINDINGS AND RECOMMENDATION

functioning. *See Cole v. Astrue*, 395 Fed. Appx. 387, 389 (9th Cir. 2010) (the temporal nature of the third party evaluation was a germane reason to assign it little weight).

\ \ \ \ \

Boyd argues the ALJ failed to appropriately explain her reasoning and simply assumed Mr. Boyd was describing Boyd's post DLI level of functioning, citing *Tobeler v. Colvin*. However, Boyd apparently ignored the ALJ's quotation of Mr. Boyd's present tense characterization of her condition. Because the ALJ provided reasoning for her conclusion, she did not assume without explanation that Mr. Boyd's description was contemporary. Regardless, *Tobeler* is readily distinguishable from the case at bar. In *Tobeler*, the ALJ improperly disregarded lay witness testimony without comment. *Tobeler*, 749 F.3d at 832. There, the Commissioner argued that the lay witness evidence was irrelevant because it was completed seven years after the DLI. *Id.* at 833. However, the court found that there was no reason to assume the witness's testimony solely described the post-DLI period. *Id.* Rather, the description encompassed the entirety of the plaintiff's period of disability. *Id.* Additionally, there was no evidence that the plaintiff's condition worsened between his DLI and the time the witness testified. *Id.* Finally, the court noted that the SSA provided the form that failed to specify which time period the witness should have considered. *Id.*

Here, the ALJ commented on Mr. Boyd's testimony and provided textual support for the conclusion that he was describing Boyd's current level of functioning, unlike *Tobeler*, where the Commissioner simply assumed the witness was speaking about the present. Additionally, while the SSA gave the same form to Mr. Boyd that it gave to the witness in *Tobeler*, here, the ALJ gave Mr. Boyd's testimony partial weight, unlike *Tobeler*, where the witness's opinion was given no weight. Finally, here, there is substantial evidence Boyd's condition worsened between the DLI and the time the witness testified, unlike *Tobeler*.

10- FINDINGS AND RECOMMENDATION

Boyd further argues against the ALJ's conclusion that Boyd's condition worsened considerably following her DLI. However, Boyd is essentially arguing for a different interpretation of the record. The ALJ reasonably interpreted the evidence and used Boyd's own statements to determine she suffered a decline in functioning after her DLI, and the court must defer to the ALJ's decision. *See Batson*, 359 F.3d at 1193 (the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision).

Lauren Stewart's lay witness testimony described Boyd's varying pain levels, dog care habits, bathroom habits, cooking and general housework abilities, and hobbies and social activities. Tr. 201.

The ALJ erred by disregarding Ms. Stewart's testimony without comment, but this error ultimately was harmless. An error is harmless when it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). Here, while the ALJ failed to explain her reasons for disregarding Ms. Stewart's testimony, her testimony did not describe any limitations beyond those that Boyd herself described. *Id.* Because the ALJ validly rejected Boyd's symptom testimony, the court can confidently conclude Ms. Stewart's testimony would not have altered the ultimate nondisability determination.

III.     Listing Determination.

The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 are "descriptions of various physical and mental illnesses and abnormalities" which are sorted by the body system each affects. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). The plaintiff has the burden of proving the Listing specifications by providing medical evidence establishing all the relevant medical criteria stated in the Listing. *Burch*, 400 F.3d at 683. A general assertion of functional problems

11- FINDINGS AND RECOMMENDATION

does not reach the threshold of disability at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). Listings 12.04 (affective disorders) and 12.06 (anxiety disorders) establish that a plaintiff must have marked limitations in at least two of the following categories to meet Listing level impairment: activities of daily living ('ADLs'), social functioning, or concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, Appendix 2, 12.04, 12.06.

The ALJ found Boyd's mental impairments, considered singly and in combination, did not meet the criteria for Listings 12.04 or 12.06. Tr. 19. The ALJ found that Boyd had mild restrictions in activities of daily living, and moderate restrictions in social functioning. *Id.* Boyd argues the ALJ erred by failing to find marked restrictions in her activities of daily living and social functioning.

The ALJ did not err in finding only mild restrictions in activities of daily living. Boyd could prepare simple meals, go outside independently, drive a car, and go shopping in stores. Tr. 19. Boyd argues that she was unable to perform these activities on one of her "bad days," which allegedly occur a few days each month. Boyd's argument would have merit if the ALJ had found no restrictions in activities of daily living. However, because the ALJ found mild restrictions in activities of daily living, she did not err in her assessment. Additionally, the ALJ is not required to assess Boyd's activities of daily living based on Boyd's "bad days," when those days do not occur on a daily, or even weekly, basis.

The ALJ did not err in finding only moderate restrictions in social functioning, citing Boyd's denial that she had ever been fired from a job for having problems getting along with other people. Additionally, Boyd's presentation during a November 2013 psychological evaluation was cooperative, and she spoke with a normal tone and volume. The ALJ also cited the examiner's notes that Boyd's responses were "rambling and overly detailed" and she "occasionally exhibited an exaggerated style in her responses." Tr. 19.

12- FINDINGS AND RECOMMENDATION

Boyd argues her social interactions at her places of employment are "legally irrelevant" because the interactions took place before her disability onset date. However, in *Robinson v. Soc. Sec. Admin.*, the court noted that the ALJ was permitted to consult an assessment made prior to the alleged onset date. *Robinson v. Soc. Sec. Admin.*, 12 Fed. Appx. 451, 453 (9th Cir. 2001). Additionally, while Boyd's condition has allegedly grown worse over time, she testified that she suffered from pain for at least one year while working. Tr. 37.

Boyd also offers contradicting evidence to support her interpretation of the record, including rarely leaving her apartment, her small social circle, and that she does not belong to any clubs or attend events on a regular basis.[2] However, the ALJ's interpretation of the record is rational; she did not err in finding mild and moderate restrictions to activities of daily living and social functioning. *See Aukland v. Massanari*, 257 F.3d 1033, 1034-35 (9th Cir. 2000) (when evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision).

IV.     RFC Assessment and VE Testimony.

Boyd contends that when her testimony is found credible and the lay witness evidence accorded its proper weight, her RFC will change to such a degree that remand is required. However, the ALJ's credibility assessment and the weight accorded to the lay witness evidence were both proper; therefore, Boyd's step five argument is inapplicable.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Boyd's application for DIB should be affirmed.

*Scheduling Order*

---

[2] The court notes that Boyd joined a Parovirus support group during the period under review.

13- FINDINGS AND RECOMMENDATION

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of November, 2016.

John V. Acosta
United States Magistrate Judge